UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LEE TYREE,

      Plaintiff,                    Case No. 2:23-cv-10168
                                    District Judge Sean F. Cox
v.                                Magistrate Judge Kimberly G. Altman

ROBIN HOWARD, MARCY
BROCKWAY, and JESSICA
THOMPSON,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 54)**[1]

I.      Introduction

      This is a prisoner civil rights case under 42 U.S.C. § 1983, Title II of the

Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act.

Plaintiff Christopher Lee Tyree (Tyree), proceeding *pro se*, is suing defendants

Robin Howard (Howard), Marcy Brockway (Brockway), and Jessica Thompson

(Thompson)[2] following an incident where he had a seizure and fell off his bed

sustaining injuries while he was in the custody of the Michigan Department of

_____

[1] Upon review of the motions, the undersigned deems these matters appropriate for
decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR
7.1(f)(1).

[2] Spellings consistent with defendants' motions.

Corrections (MDOC).[3]  *See* ECF No. 10.  Under 28 U.S.C. § 636(b)(1), all pretrial

matters have been referred to the undersigned.  (ECF No. 17).

Before the Court is a motion for summary judgment filed by Brockway,

Howard, and Thompson.  (ECF No. 54).  The motion has been fully briefed.  (ECF

Nos. 66, 67).  For the reasons that follow, the undersigned RECOMMENDS that

Brockway, Howard, and Thompson's motion be GRANTED IN PART and

DENIED IN PART.  If this recommendation is adopted, the remaining claims

would be Tyree's Eighth Amendment claims against defendants in their individual

capacities.

## II.     Background

## A.     Allegations

The undersigned has previously summarized Tyree's allegations as follows:

The incident leading to this lawsuit occurred when Tyree was incarcerated at the Gus Harrison Correctional Facility (ARF).  (ECF No. 10, PageID.50).  Defendants were all employed at ARF: Howard was the assistant deputy warden, Brockway was a resident unit manager, [and] Thompson was a prison counselor. . . .

On June 12, 2022, Tyree suffered an epileptic seizure while lying in his assigned top bunk.  (*Id.*).  The seizure caused him to roll off the bunk and fall to the floor.  (*Id.*).  When Tyree woke up, he noticed that his head was swollen, and that he had suffered various injuries to his right leg.  (*Id.*).  He was taken to the medical station where he was given Tylenol, an ice detail, and a hardcopy of his bottom bunk detail.  (*Id.*).

---

[3] Tyree also sued Rosilyn Jindal, who has since been dismissed.  *See* ECF No. 32.

2

> Tyree alleges that the MDOC defendants assigned him a top bunk even though they all knew that he had a bottom bunk detail. (*Id.*, PageID.52).

(ECF No. 28, PageID.172).

## B.   Evidence

Many of the allegations are not in dispute.  Defendants accept Tyree's deposition testimony that the relevant events took place at ARF and that Tyree was housed there from April 29, 2022 to March 30, 2023.  (ECF No. 54-3, PageID.354-355, Tyree's deposition).  Defendants also agree that during the relevant time, Brockway was a Resident Unit Manager at ARF (ECF No. 54-4, PageID.374, Brockway declaration), Howard was an Assistant Deputy Warden there (ECF No. 54-5, PageID.378, Howard declaration), and Thompson was a Prison Counselor (ECF No. 54-6, PageID.382, Thompson declaration).  They do not explicitly dispute that Tyree began experiencing seizures in 2019 or 2020 (ECF No. 54-3, PageID.353), but they do dispute that Tyree had a bottom bunk detail or that any of them were aware of that detail (ECF No. 54, PageID.324-327).

Defendants say that Tyree was housed in housing unit 4, cell 137 on June 9, 2022, the day he met with the Security Classification Committee (SCG) with Howard, Brockway, Thompson, and Angela Holman.  (ECF No. 54-6, PageID.382,).  Tyree says that he informed defendants of his bottom bunk detail, showed them verifying paperwork, and requested to be housed "back on A wing

3

with my bottom bunk detail with my prior bunkie." (ECF No. 54-3, PageID.358-359). According to Tyree, defendants told him that if he didn't give them any issues with misconducts that he would be housed back in his regular area, which he took to mean on a bottom bunk with his former cellmate. (*Id.*).

Defendants dispute these facts. They each say that Tyree did not bring a copy of his medical detail to the SCC meeting because prisoners were not permitted to bring paperwork to such meetings. (ECF No. 54-4, PageID.374; ECF No. 54-5, PageID.378; ECF No. 54-6, PageID.382). According to defendants, cell assignments are based in part on prisoners' information in the Offender Management Network Information (OMNI) system, which contains any housing restrictions that a prisoner may have. (*Id.*). Based on Thompson's OMNI review, Tyree did not have a bottom bunk detail, and she assigned him to housing unit 4, cell 206A, which was a top bunk in a two-person cell. (ECF No. 54-6, PageID.383). Knowing that prison counselors consult OMNI before making cell assignments, Howard signed off on Tyree's assignment to a top bunk, and had "no basis to believe that [Tyree] required a bottom bunk on June 9, 2022." (ECF No. 54-5, PageID.378-379). Howard received no additional information between June 9 and June 12 regarding Tyree's alleged need for a bottom bunk. (*Id.*). Brockway, for her part, says she did not prepare or sign off on Tyree's cell assignment, but is aware of the OMNI system and its use in determining cell assignments. (ECF No.

4

54-4, PageID.374-375).

Defendants also submit the declaration of Jessica Taylor, who is currently an MDOC Medical Records Examiner and who, from June 25, 2023, to April 28, 2024, was the Health Information Manager at ARF. (ECF No. 54-7). Taylor, a non-party to the case, says that Tyree's records indicate his last bottom bunk detail had expired on September 22, 2021, and he therefore did not have a bottom bunk detail again until June 13, 2022. (*Id.*, PageID.387). She says that custody staff, such as defendants, cannot issue a bottom bunk detail; this can only be done by medical staff. (*Id.*). Thus, OMNI would not have reflected a bottom bunk detail on June 9, 2022, when Tyree was assigned to a top bunk in housing unit 4. (*Id.*).

According to Tyree's deposition testimony, after he was assigned to a top bunk, he notified Sergeant Harris and Corrections Officer Spaulding of the error. (ECF No. 54-3, PageID.360-361). They said that Brockway and Thompson would be notified, but Tyree does not know whether they were ever notified and did not see them over the weekend to tell them about his need for a bottom bunk himself. (*Id.*). Between June 9 and June 12, Tyree regularly used the bottom bunk until a corrections officer told him that he was not in his bunk and had to move to the top one. (*Id.*, PageID.361-362). Then, on June 12 around 8:50 p.m., Tyree suffered a seizure while in the top bunk and fell to the floor. (*Id.*, PageID.365). He does not remember falling, but officers told him he had fallen, and he had a cut on his right

leg and swelling of his head and right knee. (*Id.*, PageID.366-367). After the incident, Tyree returned to the bottom bunk of his cell and has been on the bottom bunk ever since. (*Id.*, PageID.369).

Defendants have submitted an email from Officer Spaulding to Thompson sent on June 9, 2022, to which Thompson responded on June 10, 2022. (ECF No. 54-9, PageID.392). Spaulding said in the email that he had not received any paperwork on Tyree after the SCC, but moved him to the A Wing because the move slip had been approved. (*Id.*). Thompson acknowledged forgetting to send the paperwork, but neither of them mentioned anything regarding a bottom bunk. (*Id.*).

## C.    Tyree's Response

Tyree responded to defendants' motion with legal arguments and factual statements. (ECF No. 66). He submitted his response under penalty of perjury, thereby offering the factual statements as evidence under 28 U.S.C. § 1746. (*Id.*, PageID.453). Tyree reiterates that he told defendants about his seizure disorder and bottom bunk detail, and disputes that he did not show them his medical detail. (*Id.*, PageID.449). He cites various MDOC policies to verify that he was in fact allowed to bring his medical paperwork to the SCC meeting to show defendants. (*Id.*). According to Tyree, MDOC Policy 04.06.160 (I) states that if a prisoner claims to have a valid medical detail that the housing unit does not have

verification of, housing unit staff are to contact the Bureau of Health Care Services (BHCS) staff for verification and to ensure that a copy of the detail is placed in the prison counselor's file. (*Id.*). There is no mention of the use of OMNI to verify a prisoner's housing restrictions in the policies Tyree cites. (*Id.*).

Tyree also points to his MDOC "Medical Detail Special Accommodations," which is attached to defendants' motion. (ECF No. 54-8). Under "housing restriction" on that document, there are two entries for "Bottom Bunk." One of the entries is associated with an expiration date of September 22, 2021, but the other has no corresponding expiration date. (*Id.*).

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

7

(6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Tyree is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV.    Discussion

### A.    Eighth Amendment Claims

#### 1.    Standard

Tyree alleges that defendants were deliberately indifferent to his need for a bottom bunk detail, given the risks inherent to his seizure disorder. Under the

Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle*

*v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate

indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth

Amendment claim has two components, one objective and the other subjective.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d

693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical

need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 702-03 (quoting

*Farmer*, 511 U.S. at 834). In *Farmer*, the Court held that the objective test

requires that "the inmate show that he is incarcerated under conditions posing a

substantial risk of serious harm." *Id.* at 834; *see also Blackmore v. Kalamazoo*

*Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the

plaintiff must allege facts which, if true, would show that the official being sued

subjectively perceived facts from which to infer substantial risk to the prisoner,

that he did in fact draw the inference, and that he then disregarded that risk."

*Comstock*, 273 F.3d at 703.

### 2.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Tyree's

Eighth Amendment claims because Tyree has not shown that they violated a

clearly established constitutional right. Qualified immunity "is an immunity from

suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified). After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).

When determining whether an official is entitled to qualified immunity, the Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* at 472. The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

### 3.      Application

Tyree sues defendants under § 1983 in their individual and official capacities. As to his individual capacity claims, defendants say that Tyree has not established the subjective prong of a deliberate indifference claim because defendants did not act with a sufficiently culpable state of mind. They rest on the

fact that they reasonably relied on the OMNI system to determine that Tyree did

not have a bottom bunk detail between June 9 and 12, 2021, as stated in their

declarations as well as the declaration of former ARF Health Information Manager

Jessica Taylor.  But this assertion is rebutted by Tyree's citation to MDOC Policy

Directive 04.06.160(I), which defendants attached to their reply (ECF No. 67-1).

MDOC Policy Directive 04.06.160 governs "Medical Details and Special

Accommodation Notices."  Paragraph I instructs housing unit staff on how to

respond in a situation such as Tyree's where a prisoner informs them of a medical

detail:

> If a prisoner claims to have a currently valid Medical Detail or Special
> Accommodation Notice for which the housing unit does not have a
> copy or has not received telephone notification of its existence,
> housing unit staff shall contact appropriate BHCS staff for verification
> and to ensure that a copy is provided for placement in the prisoner's
> counselor file.

(*Id.*, PageID.470).

The parties agree that this protocol was not followed.  However, defendants

say this is of no matter, because "[t]he mere failure to comply with a state

regulation is not a constitutional violation."  ( ECF No. 67, PageID.461) (quoting

*Roberts v. City of Troy*, 773 F. 2d 720, 726 (6th Cir. 1985)).  This misconstrues

Tyree's claim.  The claim is not that defendants have violated Tyree's rights by

failing to follow the relevant policy directive.  Rather, the claim is that defendants

were deliberately indifferent to Tyree's need for a bottom bunk, and that their

11

failure to follow MDOC Policy Directive 04.06.160(I) was not reasonable.

Defendants also rely on Jessica Taylor's declaration and Tyree's medical record to show that his bottom bunk detail had expired on September 22, 2021. (ECF Nos. 54-7, 54-8). Taylor states that the bottom bunk detail had in fact expired that day, but the attached medical record itself is not so clear. As noted above, that record (Tyree's medical detail) appears to contain two entries for a bottom bunk restriction, with only one containing an expiration date. (ECF No. 54-8, PageID.390). Without further explanation, this discrepancy cannot be resolved by the Court as a matter of law based on the record as it stands.

In sum, on Tyree's Eighth Amendment claim, a number of genuine issues of material fact remain: whether he brought his bottom bunk detail to the SCC meeting, whether his medical detail for a bottom bunk had expired, and whether he would have been accommodated with a bottom bunk if defendants had followed the relevant policy directive and contacted BHCS staff instead of simply relying on the OMNI system. Due to these issues, defendants' motion for summary judgment on this claim should be denied. Further, as to defendants' qualified immunity defense, they have not addressed whether Tyree's constitutional rights were clearly established, but it *is* clearly established by the Sixth Circuit that "a prisoner has a right not to have his known, serious medical needs disregarded by a medical provider or officer." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 318 (6th Cir. 2023)

12

(internal citation omitted).  Therefore, qualified immunity on this claim should be denied as well.

### B.      Other Claims

Tyree's other claims include Eighth Amendment claims against defendants in their *official* capacities, ADA and Rehabilitation Act claims in both capacities, and a request for injunctive relief.  For these claims, summary judgment is appropriate for the reasons explained below.

### 1.      Official Capacity § 1983 Claims

Tyree's claims for money damages against defendants in their official capacities must fail.  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  The State of Michigan has not consented to civil rights suits in federal court.  *Abick v. State of Mich.*, 803 F.2d 874, 877 (6th Cir. 1986).  A lawsuit against individuals in their official capacities for money damages is considered a suit against the State and allows defendants to invoke sovereign immunity under the Eleventh Amendment.  *Doe v. Wigginton*, 21 F.3d 733, 736–37 (6th Cir. 1994).  For these reasons, defendants are entitled to summary judgment on Tyree's Eighth Amendment claims for money damages in defendants' official capacities.

13

As for Tyree's claim for injunctive relief, defendants initially argued that this claim was moot because Tyree was no longer housed at ARF.  Between the filing of defendants' motion and now, Tyree has been returned to ARF.  (ECF No. 67, PageID.464-465).  However, it appears that this claim remains moot because according to Tyree's deposition testimony, he was assigned a bottom bunk immediately after his fall and has had a bottom bunk ever since.  (ECF No. 54-3, PageID.369).  Therefore, as explained above, Tyree's claims should be limited to those against defendants in their individual capacities for money damages from the time period of June 9, 2022 to June 12, 2022.

### 2.    ADA and Rehabilitation Act Claims

As to Tyree's claims under the ADA and Rehabilitation Act, he has sued defendants under these acts in both their individual and official capacities.

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Wilson v. Gregory*, 3 F.4th 844, 859 (6th Cir. 2021) (quoting 42 U.S.C. § 12132).  "The ADA and the Rehabilitation Act in this circuit share the same substantive standard." *G.S. by & through Schwaigert v. Lee*, 558 F.Supp.3d 601, 611 (W.D. Tenn. 2021) (internal quotation marks and citations omitted).  "Thus, the court reviews claims under the

14

Rehabilitation Act as though they were brought under the ADA." *Id.*

To address the individual capacity claims first, the Sixth Circuit has held "neither the ADA nor the [Rehabilitation Act] impose liability upon individuals." *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004). "[T]he proper party is a public entity or an official acting in his or her official capacity." (ECF No. 54, PageID.335).

As for the official capacity claims, Tyree must show that (1) he has a disability; (2) he is a "qualified individual"; and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of" his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing 42 U.S.C. § 12132). The same is true for his claims under the Rehabilitation Act. *See* 29 U.S.C. § 794(a).

Tyree's claim is that he was denied a bottom bunk assignment that he needed based on his disability and that he had a valid detail for. He does not say that he was denied a bottom bunk *because* he had a disability, just that he needed the accommodation. Nor would it make sense for him to argue that the denial was motivated by the fact that he needed the accommodation. Without the requisite motivation, there is no ADA or Rehabilitation act claim. *See, e.g.*, *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030, 1036 (6th Cir. 1995) (plaintiffs could not establish an ADA claim where their exclusion from a program

15

was due to their age, not their disability).

Moreover, it is well-established that "mere allegations of inadequate medical care do not raise a viable discrimination claim." *Cannon v. Eleby*, 187 F.3d 634 (6th Cir. 1999); *see also Smith v. Aims*, No. 20-12013, 2023 WL 2297448, at *5 (E.D. Mich. Jan. 24, 2023); *Vandiver v. Corizon, LLC*, No. 16-13926, 2017 WL 6523643, at *4-5 (E.D. Mich. Dec. 21, 2017); *Stevens v. Hutchinson*, No. 1:13-CV-918, 2013 WL 4926813, at *4 (W.D. Mich. Sept. 12, 2013). Therefore, for the reasons above, defendants are entitled to summary judgment on Tyree's ADA and Rehabilitation Act claims.[4]

### D.    In Sum

The undersigned's recommendations on the disposition of Tyree's claims are as follows:

Defendants are not entitled to qualified immunity or summary judgment on Tyree's Eighth Amendment claims against defendants in their *individual* capacities, because there remain genuine issues of material fact as described above.

Defendants are entitled to summary judgment on Tyree's remaining claims. This includes his official capacity § 1983 claims and his claims under the ADA and Rehabilitation Act.

---

[4] Tyree also requests punitive damages under these Acts. In addition to having no valid claim under either Act, the Supreme Court has held that punitive damages are unavailable under the ADA and the RA. *Barnes v. Gorman*, 536 U.S. 181, 189-90 (2002).

If these recommendations are adopted, the case would be ready to proceed to trial on Tyree's Eighth Amendment claim, and the district judge may consider appointing Tyree counsel for that purpose.

<h3 align="center">V.    Conclusion</h3>

For the reasons stated above, the undersigned RECOMMENDS that Brockway, Howard, and Thompson's motion for summary judgment (ECF No. 54) be GRANTED IN PART and DENIED IN PART.  If this recommendation is adopted, the case would be ready for trial on Tyree's Eighth Amendment claim against defendants in their individual capacities.

Dated: February 7, 2025                    s/Kimberly G. Altman
Detroit, Michigan                          KIMBERLY G. ALTMAN
                                           United States Magistrate Judge


<h3 align="center"><u>NOTICE TO PARTIES REGARDING OBJECTIONS</u></h3>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 7, 2025.

s/Dru Jennings
DRU JENNINGS
Case Manager

18