UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LEE TYREE,

    Plaintiff,

v.

JINDALE ET AL.,

    Defendants.

_____/

Case No. 23-cv-10168

Hon. Sean F. Cox
United States District Court Judge

**OPINION & ORDER**
**ADOPTING FEBRUARY 7, 2025, REPORT & RECOMMENDATION (ECF No. 68) AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 54)**

The state defendants in this prisoner-civil-rights action—Robin Howard, Marcy Brockway, and Jessica Thompson—object to Magistrate Judge Kimberly Altman's determination that they are not entitled to qualified immunity from *pro se* plaintiff Christopher Tyree's claim that they violated his Eighth Amendment rights their individual capacities. The Court agrees with Magistrate Judge Altman.

### FACTUAL BACKGROUND

Neither party objects to Magistrate Judge Altman's discussion of the record, so the Court adopts it here:

> Many of the allegations are not in dispute. Defendants accept Tyree's deposition testimony that the relevant events took place at [the Gus Harrison Correctional Facility (ARF)] and that Tyree was housed there from April 29, 2022 to March 30, 2023. (ECF No. 54-3, PageID.354-355, Tyree's deposition). Defendants also agree that during the relevant time, Brockway was a Resident Unit Manager at ARF (ECF No. 54-4, PageID.374, Brockway declaration), Howard was an Assistant Deputy Warden there (ECF No. 54-5, PageID.378, Howard declaration), and Thompson was a Prison Counselor (ECF No. 54-6, PageID.382, Thompson declaration). They do not explicitly dispute that Tyree began experiencing seizures in 2019 or 2020 (ECF No. 54-3, PageID.353), but they do dispute that Tyree had a bottom bunk detail or that any of them were aware of that detail (ECF No. 54, PageID.324-327).

1

Defendants say that Tyree was housed in housing unit 4, cell 137 on June 9, 2022, the day he met with the Security Classification Committee (SCG) with Howard, Brockway, Thompson, and Angela Holman. (ECF No. 54-6, PageID.382,). Tyree says that he informed defendants of his bottom bunk detail, showed them verifying paperwork, and requested to be housed "back on A wing with my bottom bunk detail with my prior bunkie." (ECF No. 54-3, PageID.358-359). According to Tyree, defendants told him that if he didn't give them any issues with misconducts that he would be housed back in his regular area, which he took to mean on a bottom bunk with his former cellmate. (*Id.*).

Defendants dispute these facts. They each say that Tyree did not bring a copy of his medical detail to the SCC meeting because prisoners were not permitted to bring paperwork to such meetings. (ECF No. 54-4, PageID.374; ECF No. 54-5, PageID.378; ECF No. 54-6, PageID.382). According to defendants, cell assignments are based in part on prisoners' information in the Offender Management Network Information (OMNI) system, which contains any housing restrictions that a prisoner may have. (*Id.*). Based on Thompson's OMNI review, Tyree did not have a bottom bunk detail, and she assigned him to housing unit 4, cell 206A, which was a top bunk in a two-person cell. (ECF No. 54-6, PageID.383). Knowing that prison counselors consult OMNI before making cell assignments, Howard signed off on Tyree's assignment to a top bunk, and had "no basis to believe that [Tyree] required a bottom bunk on June 9, 2022." (ECF No. 54-5, PageID.378-379). Howard received no additional information between June 9 and June 12 regarding Tyree's alleged need for a bottom bunk. (*Id.*). Brockway, for her part, says she did not prepare or sign off on Tyree's cell assignment, but is aware of the OMNI system and its use in determining cell assignments. (ECF No. 54-4, PageID.374-375).

Defendants also submit the declaration of Jessica Taylor, who is currently an MDOC Medical Records Examiner and who, from June 25, 2023, to April 28, 2024, was the Health Information Manager at ARF. (ECF No. 54-7). Taylor, a non-party to the case, says that Tyree's records indicate his last bottom bunk detail had expired on September 22, 2021, and he therefore did not have a bottom bunk detail again until June 13, 2022. (*Id.*, PageID.387). She says that custody staff, such as defendants, cannot issue a bottom bunk detail; this can only be done by medical staff. (*Id.*). Thus, OMNI would not have reflected a bottom bunk detail on June 9, 2022, when Tyree was assigned to a top bunk in housing unit 4. (*Id.*).

According to Tyree's deposition testimony, after he was assigned to a top bunk, he notified Sergeant Harris and Corrections Officer Spaulding of the error. (ECF No. 54-3, PageID.360-361). They said that Brockway and Thompson would be notified, but Tyree does not know whether they were ever notified and did not see them over the weekend to tell them about his need for a bottom bunk himself. (*Id.*). Between June 9 and June 12, Tyree regularly used the bottom bunk until a corrections officer told him that he was not in his bunk and had to move to the top one. (*Id.*, PageID.361-362). Then, on June 12 around 8:50 p.m., Tyree suffered a

2

seizure while in the top bunk and fell to the floor. (*Id.*, PageID.365). He does not remember falling, but officers told him he had fallen, and he had a cut on his right leg and swelling of his head and right knee. (*Id.*, PageID.366-367). After the incident, Tyree returned to the bottom bunk of his cell and has been on the bottom bunk ever since. (*Id.*, PageID.369).

Defendants have submitted an email from Officer Spaulding to Thompson sent on June 9, 2022, to which Thompson responded on June 10, 2022. (ECF No. 54-9, PageID.392). Spaulding said in the email that he had not received any paperwork on Tyree after the SCC, but moved him to the A Wing because the move slip had been approved. (*Id.*). Thompson acknowledged forgetting to send the paperwork, but neither of them mentioned anything regarding a bottom bunk. (*Id.*). . . . .

Tyree responded to defendants' motion with legal arguments and factual statements. (ECF No. 66). He submitted his response under penalty of perjury, thereby offering the factual statements as evidence under 28 U.S.C. § 1746. (*Id.*, PageID.453). Tyree reiterates that he told defendants about his seizure disorder and bottom bunk detail, and disputes that he did not show them his medical detail. (*Id.*, PageID.449). He cites various MDOC policies to verify that he was in fact allowed to bring his medical paperwork to the SCC meeting to show defendants. (*Id.*). According to Tyree, MDOC Policy 04.06.160 (I) states that if a prisoner claims to have a valid medical detail that the housing unit does not have verification of, housing unit staff are to contact the Bureau of Health Care Services (BHCS) staff for verification and to ensure that a copy of the detail is placed in the prison counselor's file. (*Id.*). There is no mention of the use of OMNI to verify a prisoner's housing restrictions in the policies Tyree cites. (*Id.*).

Tyree also points to his MDOC "Medical Detail Special Accommodations," which is attached to defendants' motion. (ECF No. 54-8). Under "housing restriction" on that document, there are two entries for "Bottom Bunk." One of the entries is associated with an expiration date of September 22, 2021, but the other has no corresponding expiration date. (*Id.*).

(ECF No. 68, PageID.474–78 (brackets in original)).

## PROCEDURAL HISTORY

Tyree pled that Defendants were deliberately indifferent to the risk that his seizure disorder would cause him to fall out of bed and be injured unless he was assigned to a bottom bunk at ARF.[1] Tyree claims this misconduct violated his Eighth Amendment rights and seeks

---

[1] Tyree also attempted to plead claims against another defendant, Rosilyn Jindale, and the Court resolved those claims in an opinion and order dated December 13, 2023.

damages and injunctive relief from Defendants in their individual and official capacities under 42 U.S.C. § 1983. Tyree also brings claims against Defendants under the Americans with Disabilities Act of 1990 (ADA) and section 504 of the Rehabilitation Act of 1973.

Defendants moved for summary judgment in full.[2] As relevant here, Defendants argued that Tyree's individual-capacity § 1983 claims fail because they were entitled to qualified immunity. The Court assigned Defendants' motion to Magistrate Judge Altman pursuant to 28 U.S.C. § 636(b)(1), and she rejected Defendants' qualified immunity defense. Magistrate Judge Altman also recommended that Tyree's official-capacity § 1983 claims be dismissed and that Defendants are entitled to summary judgment on Tyree's ADA and Rehabilitation Act claims.

The deadline for objecting to Magistrate Judge Altman's report and recommendation has passed, and only Defendants filed objections. Tyree filed a belated response to Defendants' objections without leave of Court, so the Court does not consider that response here. And Defendants object to Magistrate Judge Altman's determination that they are not entitled to qualified immunity on Tyree's individual-capacity § 1983 claim.

## STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive motion such as a motion for summary judgment, this Court "make[s] a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1).

## ANALYSIS

Defendants argue that they are entitled to qualified immunity on Tyree's individual-capacity Eighth Amendment claim. To prevail on such a claim at trial, a plaintiff must prove: (1) that he "faced an objectively excessive risk of harm"; and (2) that the defendant's culpable "act

---

[2] Defendants never answered Tyree's complaint.

4

or omission failed to alleviate the excessive risk he faced." *Caraway v. CoreCivic of Tenn., LCC*, 98 F.4th 679, 683, 685 (6th Cir. 2024). Where, as here, a plaintiff alleges that a defendant wrongly failed to act, the defendant's omission was culpable if he or she: (a) "had notice of the risk"; and (b) "failed to reasonably respond to that risk." *Id.* at 686. Stated differently, "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

But qualified immunity is not concerned with what a plaintiff can prove at trial; qualified immunity bars a trial from ever taking place unless a plaintiff can show that the defense does not apply. To assess whether a plaintiff has done that at the summary judgment stage, courts ask: (1) "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show that the officers' conduct violated a [federal] right'"; and (2) "whether the right in question was 'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 655–56 (6th Cir. 2014) (per curiam) (alterations in original) (first quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009), and then quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). And whether a right is "clearly established" turns on "'whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Id.* at 656 (alterations in original) (quoting *Hope*, 536 U.S. at 741).

To resolve whether Tyree overcomes qualified immunity here, the Court starts with what Defendants do not dispute. They do not dispute that the risk an inmate with a seizure disorder will fall out of bed and be injured unless he or she is permitted to sleep in a bottom bunk is objectively excessive in the Eighth Amendment sense. They do not dispute that a reasonable prison official who knows that an inmate has a seizure disorder will try and mitigate the risk that

5

the inmate will fall out of bed by permitting him or her to sleep on a bottom bunk. And they do not dispute that such a prison official would have had fair warning in June 2022 that failing to mitigate such a risk would violate the inmate's Eighth Amendment rights. Thus, Defendants concede that they violated Tyree's clearly-established Eighth Amendment rights if they knew he had a seizure disorder and did not mitigate a risk that he would fall out of a top bunk.

The record shows that Defendants did just that. Tyree stated under penalty of perjury that he "told [D]efendants about his seizure disorder" at the SCC meeting on June 9, 2022. (ECF No. 68, PageID.477). Defendants submitted declarations stating that they assigned Tyree to a top bunk on June 9, 2022. And nothing in the record suggests that Defendants did anything after the SCC meeting to reduce the risk that Tyree would fall out of his top bunk before that risk materialized.

In their summary-judgment motion, Defendants argued that they "did not act with a sufficiently culpable state of mind" because Thompson reasonably concluded from ARF's OMNI system that Tyree did not have an active bottom-bunk detail on June 9, 2022, and accordingly they never "became aware of [Tyree's] need for a bottom bunk" before he fell out of his top bunk. (ECF No. 54, PageID.331, 332). Defendants repeat the same argument in their objections to Magistrate Judge Altman's report and recommendation. Specifically, Defendants argue that their "action did not amount to deliberate indifference" because "[i]t was reasonable for Thompson to rely on OMNI in making the cell assignment." (ECF No. 69, PageID.496). Defendants conclude that they "[a]t best . . . acted negligently in failing to reach out to BHCS staff to verify [Tyree's] bottom bunk detail as opposed to relying on OMNI." (*Id.*).

Defendants miss the mark. If every reasonable prison official who knew about Tyree's seizure disorder would have concluded that forcing him to sleep in a top bunk would be

6

excessively risky, then Defendants' failure to ensure that never happened was deliberately indifferent in the Eighth Amendment sense as a matter of law.  And, as discussed above, the record shows that Tyree told Defendants about his seizure disorder at the SCC meeting.  Further, even if the OMNI system showed that Tyree did not have an active bottom-bunk detail, Defendants reasonably should have concluded from their knowledge of his seizure disorder that failing to ensure he could sleep in a bottom bunk would have been excessively risky.

Defendants are not entitled to qualified immunity on Tyree's individual-capacity Eighth Amendment claim.

## CONCLUSION & ORDER

Defendants are not entitled to qualified immunity from Tyree's individual-capacity § 1983 claim, and no party objects to the remainder of Magistrate Judge Altman's report and recommendation.  Accordingly, **IT IS ORDERED** that Defendants' objection to Magistrate Judge Altman's February 7, 2025, report and recommendation (ECF No. 68) is **OVERRULED**, and that report and recommendation is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's summary-judgment motion (ECF No. 54) is **GRANTED** to the extent that it seeks dismissal **without prejudice** of Tyree's official-capacity § 1983 claim and summary judgment for Defendants on Tyree's ADA and Rehabilitation Act claims and is **DENIED** in all other respects.

**IT IS SO ORDERED.**

                                              s/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated:  March 28, 2025